UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN ___DIVISION
www.wied.uscourts.gov
In re: Case No. 14-31425 Chapter 13
Debtor. ___WILLIAM JOHN FOLEY_____/
In re:
William John Foley

### Motion To Consider Impact on Debtor
### Due To Violation of 362 The Automatic Stay

The debtor, despite every effort to engage professional bankruptcy counsel, is left to continue with his self representation and remains continually concerned about being a burden on this good Court, though the extraordinary circumstances surrounding this case are not in any manner the result of conduct by the petitioner.

Debtor makes this Motion due to the most egregious conduct by one of its creditors, Sandwich Kings, LLC., it's purported shareholders, attorneys and and agents, in flagrantly choosing to ignore debtor providing Proof of having sought protection under Chapter 13, as demonstrated by the Notice of Filing For Bankruptcy Protection given to an off duty Milwaukee County Deputy Sheriff, Brian Green, who was supervising the Eagle Movers laborers, during an unauthorized, illegal, unsanctioned replevin action, lacking the proper legal authority of Milwaukee County.

The replevin action began on September 10, 2014 at approximately 10:15AM, the debtor returning to his apartment at approximately 12:15PM, providing Mr. Green with the aforementioned notice from the Clerk's Office. With the delivery of the Notice to Mr. Green, agent for Sandwich Kings, et. al. debtor expected the replevin action would cease and the items removed from the property would be immediately returned to the debtor. They were not.

Debtor prays for relief in the amount $100,000.00 (One Hundred Thousand Dollars) Fine and Penalties from all parties involved and demands return of all items or their physical replacement, regardless of cost, for the following reasons to be portrayed.

The debtor knows, based on debtor's opening statement, the Court recognizes Debtor is a businessperson not an attorney, so chooses substantial legal authorities exclusively from

among the 50 states, who have written extensively on the issue of Violation of 362. When further details require explanation, debtor will present same in italics.

10/20/2014

WILLIAM J FOLEY
PRO SE

**This is an ANNOTATED VERSION THE ORIGINAL FOLLOWS**
**April 1-3, 2004**


# AUTOMATIC STAY: VIOLATIONS, REMEDIES AND SANCTIONS


*by*
**Lawrence R. Ahern, III**
**David W. Houston, IV**
**Raja J. Patil**
**Andrew D. Stosberg**
**Greenebaum Doll & McDonald** PLLC


## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Introduction to the Automatic Stay | 2 |
| II. | What Acts Constitute Violations? | 3 |
| III. | Gray Areas and the Need to Inquire Before Acting | 4 |
| IV. | Are Prohibited Acts Void or Voidable? | 8 |
| V. | What is the Standard for a "Willful" Violation of Section 362(h)? | 11 |
| VI. | Remedy for Violations of Sections 362(h) and 1301. | 13 |
| VII. | The Ability of a Secured Creditor or Non-party to Sue for a Violation of the Stay. | 17 |
| VIII. | What Does "Individual" Mean in Section 362(h)? | 19 |
| IX. | The Procedure for Enforcement: How Can Debtors Challenge What They Consider to be Violations of the Stay? | 20 |
| X. | Contempt Procedure Under Rule 9020 | 24 |
| XI. | Use of Section 105(a) as an Alternative to Section 362 | 24 |
| XII. | Is There Jurisdiction in State Court to Enforce the Automatic Stay? | 27 |

# AUTOMATIC STAY: VIOLATIONS, REMEDIES AND SANCTIONS

*by*

Lawrence R. Ahern, III
David W. Houston, IV
Raja J. Patil
Andrew D. Stosberg
Greenebaum Doll & McDonald PLLC

## I.      Introduction to the Automatic Stay

Upon the filing of a bankruptcy, an automatic stay goes into effect.  The automatic stay provides a debtor immediate and automatic protection from the collection efforts of creditors.  Thus, one purpose of the automatic stay is to provide a time cushion for the bankruptcy estate to organize.  In a Chapter 7 case, the automatic stay provides time for the trustee to identify and collect the property of the estate that will be used for distribution to the creditors, whereas, in a voluntary Chapter 11 or 13 case, the stay gives the debtor time to prepare a plan of reorganization.  In an involuntary case, the stay gives the debtor time to controvert the petition.  In addition, the automatic stay is important because it prevents a "race to the courthouse" between rival creditors competing for the same limited pot of money.  In the words of one group of bankruptcy commentators, "[c]reditors' collection efforts must be stopped quickly in order to accomplish the orderly and even administration of the debtor's property and financial affairs that is a chief goal of bankruptcy."[1]

---

[1] 1 David G. Epstein, Steve H. Nickles & James J. White, BANKRUPTCY § 3-1 at 77 (West Practitioner Series 1992) (hereinafter cited as "Epstein et al.").

Case 14-31425-pp    Doc 39    Filed 10/20/14    Page 4 of 31

## II.    What Acts Constitute Violations?

Section 362 requires all collection efforts to cease immediately cease upon the filing of a voluntary or involuntary bankruptcy petition.  Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay against the following activities:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.[2]

It is worth noting that the automatic stay is truly "automatic," in that it takes effect instantly upon the filing of a bankruptcy petition and is effective against most entities, including the debtor,[3] and regardless of whether the entity is aware of the filing.[4]  A limited exception to this general rule is that in certain rare and usual cases, such as those involving an abuse of the bankruptcy court's jurisdiction, the automatic stay might not apply.[5]

---

[2] 11 U.S.C. § 362(a).
[3] *In re Shapiro*, 124 B.R. 974, 981 (Bankr. E.D. Pa. 1991).
[4] Epstein et al. at 78.
[5] *FDIC v. Cortez*, 96 F.3d 50 (2d Cir. 1996) (debtor colluded in filing of involuntary petition after court had prohibited the filing of a voluntary petition for 12 months); *see also Matter of Cortez*, 16 B.R. 481 (W.D. Mo. 1981), *aff'd* 691 F.2d 390 (8th Cir. 1982) (a creditor acting in reliance on such an exception does so at its own peril).

3

Next, subsection 362(b) lists 18 activities that are exempt from the automatic stay.[6]  In general, the exemptions are specific and include activities such as the continuation of a criminal action against the debtor,[7] the exercise by government of its police or regulatory powers,[8] and the collection of alimony and child support.[9]  When an exemption applies, the exempted conduct is automatically allowed without the need for a court-ordered relief from the stay.[10]  However, as discussed below, seasoned bankruptcy practitioners often exercise caution and request court permission before proceeding with the excepted conduct.

The automatic stay concludes upon the happening of certain occurrences listed in section 362(c)-(e), such as the closing or dismissal of the case, or the discharge of the debtor.  When the automatic stay ends, each creditor is allowed to enforce only those rights that have survived bankruptcy, but only in the form and amount that bankruptcy law has left them.[11]

### III.  Gray Areas and the Need to Inquire Before Acting

The stay prescribed by section 362(a) provides a very broad range of protection to the debtor and other constituencies of a bankruptcy estate.  However, again, subsection 362(b) also carves out a set of express exceptions to the stay and there are many instances in which the distinction between what is covered by the stay and what is excluded may not be clear.  These areas of potential ambiguity are too numerous to catalogue here and, indeed, such a list would intrude on the other areas of this material.  Nevertheless, several areas, particularly in which there have been recent developments, are worthy of mention.

---

[6] 11 U.S.C. § 362(b).
[7] 11 U.S.C. § 362(b)(1).
[8] 11 U.S.C. § 362(b)(4).
[9] 11 U.S.C. § 362(b)(2).
[10] *See Matter of Daugherty*, 117 B.R. 515, 518 (Bankr. D. Neb. 1990).
[11] Epstein et al. at 81.

Simple bookkeeping entries by creditors, reflecting charges to an account owed by a debtor have been held recently not to violate the stay.[12] This is consistent with the Supreme Court's ruling in favor of a bank's "freeze" on an account.[13] It seems prudent, however, where the action actually deprives the debtor of the use of property, to proceed promptly to file a motion for relief from the stay, because subsection 362 (a)(7) specifically precludes "the setoff of any debt owed to the debtor ... " and subsection 362 (a) (3) precludes "any act ... to exercise control over property of the estate ... ."[14]

Section 362(a)(6) stops collection efforts against the debtor, but it does not stay actions against sureties to recover property in which the debtor has no interest.[15] A recent decision in the *Adelphia Communications* case illustrates, however, that confusion may also arise in this area.[16] There, the courts struggled with a lawsuit brought by former directors and officers of the debtor to collect under the debtor's errors & omissions insurance policies. The bankruptcy court stayed the litigation. The district court, however, concluded that the bankruptcy court had incorrectly regarded the proceeds to the policies as assets of the debtor's estates and therefore automatically subject to the stay under Section 362(a)(3).

Many actions that may relate to or establish a claim in a bankruptcy also have the characteristics of the government's exercise of its police or regulatory powers, exempted from the stay by subsection 362(b)(4). Thus, the District Court for the District of Delaware has recently concluded that a state agency's action for restitution against a debtor-homebuilder for alleged violations of Maryland's consumer protection and new-home construction laws constituted an

---

[12] *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1 (1st Cir. 2003); *In re Sims*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002).
[13] *Citizens Bank of Md. v. Strumpf*, 514 U.S. 1035, 115 U.S. 1398, 131 L. Ed. 2d 286 (1992).
[14] 11 U.S.C. § 362(a)(3).
[15] See, e.g,, *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 264 (9th Cir. 1991); *In re Smith*, 14 B.R. 956, 957-58 (Bankr. D. Conn. 1981).

exempt exercise of police and regulatory power.[17]  The court observed that "legislative history clearly favors the government's position" that its "enforcement action was not intended to protect the government's interest in the debtor's property, but related to matters of public safety and welfare and was intended to effectuate public policy."[18]

Similarly, arbitrations of labor issues encounter ambiguity in the application of the automatic stay.  Although actions of the NLRB may be seen as the enforcement of police powers, the issue as to whether the automatic stay prevents the arbitration of labor disputes has arisen in the interplay between sections 362 and the special Chapter 11 restrictions on rejection of bargaining agreements.[19]  Some courts have taken the view that debtors cannot use the automatic stay to unilaterally terminate or modify collective bargaining agreements in contravention of the requirements found in section 1113(f).[20]  These Courts have held that a case-by-case determination must be made as to whether 1113(f) trumps the enforcement of the automatic stay.  The focus of the analysis is whether the union has a procedural mechanism to bring the dispute before the bankruptcy court and whether the bankruptcy court has jurisdiction to resolve such dispute.  If such a procedural mechanism exists and the bankruptcy court has jurisdiction, then the automatic stay can be enforced without the debtor's first going through the formal requirements of 1113(f).

The First Circuit has recently held that "while the automatic stay is in effect, a creditor may engage in post-petition negotiations pertaining to a bankruptcy-related reaffirmation

---

[16] *In re Adelphia Communications Corp.*, 298 B.R. 49 (S.D.N.Y. 2003).
[17] *Consumer Protection Div. v. Nanticoke Homes, Inc.*, 2003 WL 22287387 (D. Del. Sept. 30, 2003).
[18] 2003 WL 22287387 at *2.
[19] 11 U.S.C. § 1113(f).
[20] *See In re Bunting Bearings*, 302 B.R. 210 (Bankr. N.D. Ohio 2003); *Shugrue v. Airline Pilots Association, International (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2nd Cir. 1990).

6

agreement so long as the creditor does not engage in coercive or harassing tactics."[21]

Debtor: Prior to returning to the residence, the movers had begun a very disturbing process that effectively created mayhem, where there had been order and organization. As an example, the office area of the residence had a large five drawer 5 foot wide filing cabinet. The moving staff have been directed to take all of the files out of the file cabinet, with the intention of simply taking the file cabinet. The file cabinet has been purchased by the debtor previously, from a exiting tenant who was moving from the building for $25.00.

 The movers efforts were focused on seizing the file cabinet, without any regard to the organization of the paperwork, which had been stored in the file cabinet, leaving the paperwork in utter disarray, carelessly stacked on requiring tens of man-hours to ultimately reorganize the information, simply to seize a file cabinet, that in the new world of a paperless office, had little to no value, other then to be disruptive and mean-spirited.

In an adjoining office there were file boxes and large plastic containers holding more paperwork, clothing and personal items that headman carefully packed for storage and wereorganize for moving, all of them have been opened and the contents dumped on the floor in the center of the room, as though the movers were searching for something.this carelessness and lack of respect for personal belongings, was obvious in all the rooms where the movers had been working.

Outerwear, exempt from seizure, was found packed in boxes in preparation of being moved to the van, prior to debtor returning with the proof of filing.

For the purpose of fully expanding on the conduct of Mr. Green and the movers he was directing they proceeded to the home of an associate of the debtor, with a new twist. mr. Green and the movers were joined by a purported 50% shareholder or sandwich things, Marianna German Duncan,along with her husband who were allowed by Mr. Green to go on a shopping trip" of Mr. Bob's home, picking up items that they chose to take, all with the approval of Mr. Green.

---

[21] *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 399 (1st Cir. 2002).
[22] *In re Diamond*, 346 F.3d. 222 (1st Cir. 2003).
[23] *Id.* at 226.
[24] Refiling is prohibited by the Code under certain circumstances, including voluntary dismissal of the case after a creditor requests relief from the stay. *See* 11 U.S.C. § 109(g)(2).
[25] *Umali v. Dhanani (In re Umali)*, 345 F.3d. 818 (9th Cir. 2003).
[26] 345 F.3d. at 824.

7

## IV. Are Prohibited Acts Void or Voidable?

One consequence of violating the automatic stay is that the courts must reverse the effects of the violation on the stay's beneficiaries. The majority rule seems to be that any act or occurrence that violates the stay is "void *ab initio*."[27] Thus, to the extent that any act or occurrence violates the stay, that act or occurrence will lack any legal effect against the debtor and others whom the rule protects. This essentially means that the act or occurrence will be treated as if it never occurred and anyone who claims through the act or occurrence takes nothing because it "is null and void *ab initio* and has no validity for any purpose."[28]

On the other hand, a few courts have adopted the view that acts violating the stay are not automatically void, but rather "voidable."[29] There are, however, two meanings of "voidable" that courts have applied. Sometimes, a court simply means that the act is not irretrievably void because the court can annul the stay.[30] "These cases draw support for this proposition from the

---

[27] *Soares v. Brockton Credit Union*, 107 F.3d 969, 975, 976 (1st Cir. 1997); *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); In re Williams, 124 B.R. 311, 316-18 (Bankr. C.D. Cal. 1991); *Smith v. First American Bank, N.A.*, 876 F.2d 524 (6th Cir. 1989); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987); *Morgan Guaranty Trust Co. of New York v. American Sav. & Loan Ass'n*, 804 F.2d 1487 (9th Cir. 1986); *In re Advent Corp.*, 24 B.R. 612, 614 (1st Cir. 1982); *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1989); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1982); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990); *In re Shamblin*, 890 F.2d 123, 125 (9th Cir. 1989); *In re Knightsbridge Development Co., Inc.*, 884 F.2d 145, 148 (4th Cir. 1989); *Smith*, 876 at 526; *In re Ward*, 837 F.2d 124, 126 (3d Cir. 1988); *Anglemyer v. United States*, 115 B.R. 510, 514 (D. Md. 1990); *Matter of Guterl Special Steel Corp.*, 111 B.R. 107, 110 (W.D. Pa. 1990) *judgment aff'd*, 916 F.2d 890 (3d Cir. 1990); *In re Garcia*. 109 B.R. 335, 338 (N.D. Ill. 1989); *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 132 (W.D. Mich. 1989); *Richards v. City of Chicago*, 80 B.R. 451, 453 (N.D. Ill. 1987), *In re Williams*, 124 B.R. 311, 316-18 (Bankr. C.D. Cal. 1991), *In re Draughon Training Institute, Inc.*, 119 B.R. 924-26 (Bankr. W.D. La. 1990); *In re Lampkin*, 116 B.R. 450, 451 (Bankr. D. Md. 1990); *In re Massenzio*, 121 B.R. 688, 693 (Bankr. N.D.N.Y. 1990).

[28] *Anglemyer*, 115 B.R. at 514.

[29] Epstein et al. at 357.

[30] *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178-79 (5th Cir. 1989); *In re Bresler*, 119 B.R. 400, 403-04 (Bankr. E.D.N.Y. 1990); *In re Still*, 117 B.R. 251, 255 (Bankr. E.D. Tex. 1990); *In re Jones*, 63 F.3d 411 (5th Cir. 1995); *Bronson v. U.S.*, 46 F.3d 1573 (Fed. Cir. 1995); *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993); *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990).

8

fact that one of the alternatives under section 362(d), when a request for relief from the stay is made, is to annual the stay and thus apparently validate actions otherwise taken in violation of it."[31] In these instances, the courts' use of "voidable" does not contradict the general rule that acts violating the stay are *void ab initio*.[32]

In other cases, however, the court fully intends to reject the "*void ab initio*" rule.[33] For example, the Ninth Circuit Bankruptcy Appellate Panel stated, "Actions in violation of the stay can be declared invalid in an appropriate proceeding but are capable of being cured by confirmation or ratification or if no proceeding is brought to avoid the voidable act."[34] This "appropriate proceeding" is "an action by the debtor or trustee during the bankruptcy case in which the stay violation occurred."[35] The primary argument for adopting this minority "voidable" rule is that section 549 of the Bankruptcy Code, which empowers trustees to avoid post-petition transfers of estate's property, would be unnecessary if acts violating the automatic stay were always declared void *ab initio*.[36]

---

[31] COLLIER ON BANKRUPTCY, § 362.11[1] (Lawrence P. King ed., 15th Ed. 2003) *citing In re Siciliano*, 13 F.3d 748 (3d Cir. 1994).

[32] *See also* COLLIER, § 362.11[1] ("[A]lthough a court may use the annulment power to give retroactive relief from the stay, relief should be granted sparingly. The breathing room provided by the stay would be limited if debtors feared regular retroactive validation. Debtors would be forced to defend all actions, even those stayed, because the stay might be retroactively annulled and a default by the debtor might become binding. Thus, retroactive relief should be granted only in extraordinary circumstances, such as when a creditor acted without knowledge of the stay, under circumstances in which relief from the stay would have been available, and where the creditor changed its position in reliance on the validity of its action."); *see also* In re *Fjeldsted*, 293 B.R. 12, 24 (9th Cir. 2003) (annulment of the automatic stay is not extraordinary relief).

[33] *In re* Schwartz, 119 B.R. 207, 209 (Bankr. 9th Cir. BAP 1990), *rev'd* 954 F.2d 569 (9th Cir. 1992); *see also In re Janis*, 125 B.R. 274, 278 (Bankr. D. Ariz. 1991) (holding "[a]ctions taken in violation of the automatic stay are not *void ab initio* only voidable," adhering to the rule of *Schwartz*); *In re Big Squaw Mountain Corp.*, 122 B.R. 831, 833 n.6 (Bankr. D. Me. 1990)(acts in violation of the stay, were not void *ab initio*); Sikes, 881 F.2d at 178-79(concluding that violations of the automatic stay are voidable); In re Oliver, 38 B.R. 245, 248 (Bankr. D. Minn. 1984).

[34] *Schwartz*, 119 B.R. at 209.

[35] *Id.* at 211.

[36] Epstein et al. at 359; 11 U.S.C. § 549; *Sikes*, 881 F.2d at 178-79; Oliver, 38 B.R. at 248.

Several bankruptcy commentators suggest that this rationale is weak at best. In the words of one such authority:

> This argument hangs everything on an inference of congressional intent for which there is no further proof, and it ignores that the overlap between sections 549 and 362 is not complete so that any superfluity that supposedly proves the voidable rule is incomplete. Moreover, the two sections can be reconciled so that section 549 compliments the dominant rule that acts violating section 362 are void.[37] Most importantly, the voidable rule lacks any substantial reason or policy to support it very long or far, much less enough force to overcome the threat it poses to the deterrence of the stay and the stability of the bankruptcy process.[38]

Only a few bankruptcy courts have adopted the "voidable" rule. Even among state courts, where acceptance of the "voidable" rule is more prevalent and perhaps more foreseeable due to the rule's softer stance on local law, acceptance is by no means complete.[39]

---

[37] *See also Garcia*, 109, B.R. at 340 ("[T]here is a distinction between actions in violation of the automatic stay and specifically prohibited and actions which are not otherwise expressly authorized by the Bankruptcy Code. All actions which are not authorized by the Bankruptcy Code are not in violation of the automatic stay defined in Section 362(a)." Section 549 targets "post-petition transfers in which the debtor is a willing participant, but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.").

[38] Epstein et al. at 359.

[39] Not infrequently the state courts appear to follow the voidable rule or something akin to it. *See e.g. Philippe v. Anderson*, 546 A.2d 582 (N.J. Super. L. 1988); *City of Middletown v. Holiday Syrups, Inc.*, 523 N.Y.S 2d 717 (N.Y. Sup. Ct. 1987); *Audio Data Corp. v. Monus*, 789 S.W.2d 281 (Tex. Ct. App. 1990) (*in dicta*); *Cissne v. Robertson*, 782 S.W.2d 912 (Tex. Ct. App. 1989); *but see, e.g.*, opining that acts violating the stay are void, *First Bank of Whiting v. Sisters of Mercy Health Corp.*, 545 N.E.2d 1134 (Ind. Ct. App. 1989); *Overbey v. Murray*, 569 So.2d 303 (Miss. 1990); *Continental Casing Corp. v. Samedan Oil Corp*, 751 S.W.2d 499, 501 (Tex. 1988). Alternatively and incorrectly, state courts sometimes act as though they are annulling the stay. *See Tarakjian v. Krone*, 196 Cal. App. 3d 1243 (Cal. App. 1987); *Phillippe*, 227 N.J. at 251.

10

## V.    What is the Standard for a "Willful" Violation of Section 362(h)?

Those violating the automatic stay may be found liable for damages under section 362(h) of the Bankruptcy Code if their violation was "willful."[40]  Section 362(h) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees and, in appropriate circumstances, may recover punitive damages."[41]

Courts have held that a "willful violation" of the automatic stay occurs when a creditor acts intentionally with knowledge of the automatic stay[42] or knowledge of the bankruptcy in general.[43]  However, one commentator points out that "the courts do not disagree on the event about which the creditor must be aware because 'knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay.'"[44]  Even if the creditor acted in ignorance of the bankruptcy, it will be deemed to have committed a willful violation if it "thereafter acquired actual knowledge of the debtor's bankruptcy and failed to take steps to undo and correct the result."[45]

---

Debtor: Returning to the residence, debtor gave Mr. Green a copy of the Filing Notice, Mr Green supposedly contacted the Milwaukee County Corporate Counsel's Office, speaking with someone who said that what had been removed from the residence, did not need to be returned.

Debtor had a brief conversation with the individual, who refused to reconsider his decision. The phone call was made on Mr. Green's phone. Debtor will prepare a motion to compel Mr. Green to produce the telephone bill which will confirm who had been called, if the Court so desires.

[45] *In re Bunch*, 119 B.R. 77, 80 (Bankr. D.S.C. 1990).

11

Intent is not a consideration for determining whether a creditor violated the automatic stay.[46] Rather "it is enough that the creditor knows of the bankruptcy filing engages in deliberate conduct that, it so happens, is a violation of the stay."[47] Furthermore, "[wh]ere there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional."[48]

Thus, proving that a creditor violated the automatic stay means proving that a creditor had knowledge of either the bankruptcy or the automatic stay when it committed the violation. In that case, a form of strict liability is created by section 362(h), which only additionally requires damages to be proved in order to take effect. Specifically, courts have held that liability is not dependent on proving a request and refusal to quit the violation[49] or on establishing civil contempt.[50] This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.[51]

The same rationale explains why good faith is not a defense to a "willful violation" and is irrelevant to liability.[52] Specifically, "[w]hether the party believes in good faith that it had a right

---

[46] *In re* Sharon, 234 B.R. 676, 687 (6th Cir. 1999); *In re Goodman,* 991 F.2d 613, 618 (9th Cir. 1993); *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989); *see also In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (Cir. 1990) (quoting *Bloom*); *In re Bulson*, 117 B.R. 537, 539 (9th Cir. BAP 1990) (quoting *Bloom*); *Chateaugay Corp.,* 112 B.R. at 530.
[47] Epstein et al. at 364.
[48] *Namie,* 96 B.R. at 654.
[49] *Chateaugay Corp.,* 112 B.R. at 530, *rev'd on other grounds,* 920 F.2d 183 (2d Cir. 1990).
[50] *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 293 (4th Cir. 1986); *In re Karsh Travel, Inc.,* 102 B.R. 778, 780-81 (N.D. Cal. 1989), *appeal dism'd, vac'd in part,* 942 F.2d 792 (9th Cir. 1990); *In re Alberto,* 119 B.R. 985, 993-94 (Bankr. N.D. Ill. 1990) ("[T]he damage remedies afforded by section 362(h) are neither sanctions nor based on contempt of court.").
[51] *Crysen,* 902 F.2d at 1105.
[52] *Atlantic Business,* 901 F.2d at 329; *compare In re Drexel Burnham Lambert Group Inc.,* 120 B.R. 724, 738-39 (Bankr. S.D.N.Y. 1990) (though it is true that it is not a defense that violative of stay, damages are not appropriate where debtor repeatedly assured defendants that their conduct was not violative of the stay).

12

to the property is not relevant to whether the act was 'willful.'"[53] "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of the act."[54] Likewise, even good faith reliance on an attorney's advice will not serve as a defense to a "willful violation."[55] On the other hand, inadvertence has been held to be a valid defense to a "willful violation" if it negates a creditor's intent to act.[56] Inadvertence, however, may not be used to prove innocence if there is already a "willful violation" and may also not be a valid defense if there is a pattern of inattentiveness.[57]

## VI.    Remedy for Violations of Sections 362(h) and 1301.

The damages that are recoverable under section 362(h) include actual damages, such as costs and attorneys' fees.[58] Under section 362(h), actual damages are based on "losses actually suffered" as a result of the violation[59] and are not awarded unless they are based on sufficient proof.[60] There is, however, a split of authority however among the courts as to whether expenses

---

[53] *Atlantic Business*, 901 F.2d at 329 *quoting Bloom*, 875 F.2d at 227; *see also Karsh Travel*, 102 B.R. at 780.
[54] *Chateaugay*, 112 B.R. at 530 *quoting In re Sansone*, 99 B.R. 981 (C.D. Cal. 1989). Most courts would likely agree, but a couple of cases go the other way and have decided that a violation is not willful if legitimate doubt and uncertainty existed on whether or not the stay covered the conduct. *University Medical Center v. Sullivan*, 125 B.R. 121, 126-28 (E.D. Pa. 1991) (rejecting the rule that willful is a violation with the knowledge of the bankruptcy); *In re Reiter*, 126 B.R. 961, 966 n.4 (Bankr. W.D. Tex. 1991).
[55] *Taylor*, 884 F.2d at 483; *Namie*, 96 B.R. at 654.
[56] *In re Academy Answering Service, Inc.*, 100 B.R. 327, 330 (N.D. Ohio 1989) (inadvertence in failing timely to modify computer software does not result in willful violation); *In re Red Ash Coal & Coke Corp.*, 83 B.R. 399, 403-04 (W.D. Va. 1988) (in drafting default order for judgment in suit against several parties, creditor inadvertently failed to omit the debtor's name.).
[57] *Chateaugay Corp.*, 112 B.R. at 531.
[58] *See* 11 U.S.C. § 362(h).
[59] *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1988) (damages against creditor for violating the stay reversed because evidence of lost contracts too speculative and the evidence of casual relation was conjecture).
[60] *Lovett v. Honeywell*, 930 F.2d 625, 629 (8th Cir. 1991); *Alberto*, 119 B.R. at 995 (the court cannot award damages, costs or fees where none have been clearly proven). *In re Still*, 117 B.R. 251, 254 (Bankr. E.D. Tex. 1990); *Matter of Schewe*, 94 B.R. 938, 940 (Bankr. W.D. Mich. 1989).

Case 14-31425-pp    Doc 39    Filed 10/20/14    Page 15 of 31

are recoverable without actual damages.[61] At least one commentator supports recovery of costs and fees, even without actual damages, based on the reasoning that "the costs and fees are themselves a form of actual damages."[62] Additionally, it has been pointed out that if this type of recovery were not allowed, "the practical effect [would be] to narrow the stay by limiting enforcement to violations that cause damages that can be proved with certainty."[63]

Although punitive damages are separate from actual damages, many courts require at least minimal actual damages before they will consider awarding any punitive damages.[64] In addition, the Bankruptcy Code provides that punitive damages are only awarded under "appropriate circumstances," which usually means heightened culpability of the defendant.[65] Therefore, a bare willful violation that justifies actual damages is not sufficient for punitive damages and only "an additional finding of maliciousness or bad faith on the part of the offending creditor warrants the imposition of punitive damages."[66] For example, actions

---

[61] See *Lovett*, 930 F.2d 625 at 629 (attorneys' fees are appropriate only when there are actual damages); *Still*, 117 B.R. at 255 (no award of attorneys' fees for prosecuting de minimis violation); *but see Chateaugay*, 112 B.R. at 530 (section 362(h) allows recovering attorneys' fees even if no other damages are proved); *Omni Graphics, Inc.*, 11 B.R. at 645 (the fact that the estate suffered no actual damages does not prevent court from awarding attorneys' fees and costs); *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D. N.Y. 1998)(awarding attorney's fees under section 362(h) after finding the debtor suffered no compensable injury); *In re Kirk*, 199 B.R. 70,73 (Bankr. N.D. Ga. 1996)(awarding attorney's fees under section 362(h) as the only compensatory damages resulting from the creditor's violation of section 362).
[62] Epstein et al. at 366.
[63] *Id.*
[64] *Alberto*, 119 B.R. at 994 ("Absent the showing of liquidated or demonstrable actual damages, the Court declines to assess actual or punitive damages."); *In re Lile*, 103 B.R. 830, 841-42 (Bankr. S.D. Tex. 1989) ("[P]unitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal").
[65] 11 U.S.C. § 362(h).
[66] *Crysen*, 902 F.2d at 1105; *DaShield*, 124 B.R. at 252 (punitive damages awarded because creditor refused to remove lien after the court ordered it done); *United States v. Ketelsen*, 104 B.R. 242, 254 (D.S.D 1988), *aff'd*, 880 F.2d 990 (8th Cir. 1989); *see also Bloom*, 875 F.2d at 228 (higher state of mind required).

14

involving "egregious, intentional misconduct"[67] that is "oppressive,"[68] "outrageous,"[69], "fraudulent,"[70] "reckless"[71] or in "bad faith"[72] may result in punitive damages.[73] However, in contrast, section 362(h) violators who proceed in good faith, notwithstanding their willful violation, may have a defense against a claim seeking punitive damages.[74]

Debtor: it is hard to imagine a negative adjective or adverb that could not reasonably be used in describing the conduct an abusiveness of the creditor towards the debtor. The anger and hostility of the creditor has grown since the original lawsuit was filed and the creditor has not experienced a single reversal or negativedecision of the Circuit Court, to the point that the original trial and trial date were never realized and the debtor was never given an opportunity to give testimony or proof in his own defense.

The" coup de grace" that left the creditor(s) with the opinion that they can walk on water, was a Summary Judgment, without trial or testimony from the debtor, in favor of the creditors in the amount of $1,876,000.

---

CODE CONG. & AD. NEWS 6082-84.

Unlike section 362, there is no provision in section 1301 for the payment of damages for violation of the co-debtor stay. The courts are evenly split on the issue as to whether or not the damages provision of section 362(h) can be applied to a section 1301 violation without first finding a separate section 362 violation.[77] Some courts have applied the damage provisions of section 362(h) to section 1301 violations in cases where an act, which violates section 362, also injures a co-debtor under section 1301.[78] Other courts, however, have refused to extend section 362(h) to violations of section 1301, citing the plain language of section 1301, which does not include a damages section or a reference to section 362(h).[79] The courts thus remain uncertain as to exactly how these two code provisions relate to one another.

Another relationship that is equally unclear under the Bankruptcy Code is the relationship between section 362(h) and contempt as sources of damages for stay violations.[80] The damages remedy of section 362(h) was added to the Code in 1984. Before then, award of damages for violating the stay was usually based on the court's civil contempt power and usually took the form of sanctions.[81] Some courts continue to use contempt based on section 105 in certain

---

[77] It does seem to be the general rule, however, that actions taken in violation of the co-debtor stay are void. *In re Holder*, 260 B.R. 571 (Bankr. M.D. Ga. 2001); *In re Harris*, 203 B.R. 46 (Bankr. E.D. Va. 1994).

[78] *In re Bell*, 1993 WL 13005092 at 2 (Bankr. S.D. Ga. 1993) ("although section 1301 has no separate damages provision ...an "individual injured" for purposes of Section 362(h) includes a co-debtor protected by section 1301 if the act that violates section 362 also injures the co-debtor."); *In re Singley*, 233 B.R. 170, 174 (Bankr. S.D. Ga. 1999) (any damages award under Section 1301 "would have to result from a finding that Movant willfully violated section 362"); *Sommersdorf*, 139 B.R. at 702 (as rationale for awarding damages for violation of section 1301 through section 362(h) to a debtor, the court stated "the legislative history is clear that both provisions serve to protect the debtor.").

[79] *In re Sheets*, 2001 WL 1699676 at 1 (Bankr. M.D. N.C. 2001)(the court stating in dicta that "[a]wards of costs and attorneys fees and punitive damages are limited to willful violations of the automatic stay pursuant to section 362(h), which does not apply to violations of the co-debtor stay.").

[80] Epstein et al. at 375 ("the bottom line is that no description is very reliable about the relationship between section 362(h) and contempt as sources of damages for stay violations. How the two remedies fit together depends on how the courts size both of them, and the courts are not agreed on the exact shape of [either] one of them.").

[81] *Id.*

16

situations despite the advent of 362(h)[82]  Other courts have held, however, that because the automatic stay is a creature of statute and not a rule or order of the court, the court has no authority to sanction for contempt.[83]

### VII.  The Ability of a Secured Creditor or Non-party to Sue for a Violation of the Stay

Courts have held that creditors have standing to sue under section 362(h).[84]  As a rationale for this conclusion, these courts point to the fact that one of the main goals of the automatic stay is "to protect creditors in a manner consistent with the bankruptcy goal of equal treatment."[85]  At least one commentator argues that because "[t]he stay intends limited protection for creditors ... section 362(h) should logically permit them to repair harm resulting from a breach in the protection intended for them."[86]  The court in *Homer Nat'l Bank v. Namie*,[87] stated:

> If Congress intended to limit the remedies in § 362(h) to debtors it could have done so by the simple expedient of replacing the term "individual" with "debtor." Congress chose not to do so, and this court is unwilling to impose limitations not supported by the statutory language, jurisprudence, or legislative history. Moreover, it seems illogical to conclude that Congress intended to limit § 362(h)

---

[82] *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1545 (11th Cir. 1996); *In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990) (stay violations may be punished under 11 U.S.C. § 362(h), if applicable, or as a contempt under 11 U.S.C. § 105); *In re Grosse*, 96 B.R. 29, 32 (E.D. Pa. 1989); *In re Prairie Trunk Railway*, 125 B.R. 217, 222 (Bankr. N.D. Ill. 1991); *Red Ash Coal*, 83 B.R. at 403.
[83] *In re Hunter*, 190 B.R. 118, 199 (Bankr. D. Colo. 1995).
[84] *Matter of Pointer*, 952 F.2d 82, 86 (5th Cir. 1992); *Namie*, 96 B.R. at 655; *In re Reserves Development Corporation*, 64 B.R. 694, 699-700 (W.D. Mo. 1986), *reversed on other grounds*, 821 F.2d 520 (8th Cir. 1987); *Rushville Nat'l Bank v. Wells Fargo Bank (In re DuPont Feed Mill Corp.)*, 121 B.R. 555, 561 n. 15 (S.D. Ind. 1990) ("It is important to note that in bankruptcy, one creditor may be forced to pay other creditors for violation of the automatic stay [under § 362(h)]"); *Lilly v. Federal Deposit Ins. Corp.*, 1990 WL 199281 (E.D. La. Nov. 30, 1990); *Prairie Trunk*, 112 B.R. at 929; *Matter of Winters*, 1995 WL 453053 (N.D. Ill. 1995); *International Forex of California, Inc.*, 247 B.R. 284 (Bankr. S.D. Cal. 2000); but see *In re Bankvest Capital Corp.*, 276 B.R. 12, 27 (Bankr. D. Mass. 2002) (committee of unsecured creditors were not "individuals" under 11 U.S.C. § 362(h)).
[85] *Homer*, 96 B.R. at 654; *Reserves Development Corporation*, 64 B.R. at 699-700 (the Code protects the rights of all creditors to share equally in the assets of the debtor's estate).
[86] Epstein et al. at 362.
[87] 96 B.R. 652, 654-55 (W.D. La. 1989).

to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment.[88]

Other courts may offer some non-parties limited protection under the automatic stay in "unusual circumstances."[89] The Fourth Circuit in *A.H. Robins v. Piccinin*[90] defined instances in which extension of the automatic stay to non-parties would be warranted. The first of such instances is when the nonparties' interests are "so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest."[91] The second set of circumstances in which the court may extend the automatic stay to cover actions against non-debtors would be to prevent actions against property covered by the stay.[92]

However, among the cases that follow the *A.H. Robins* rule, it is unclear what redress a non-party, to which the automatic stay was extended, would have on account of a violation of the stay. This is because, with the exception of section 1301 co-debtors, the courts have generally been unwilling to extend standing to sue for damages under section 362(h) to non-parties.[93]

---

[88] *Namie*, 96 B.R. at 655; *see also* H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297.

[89] *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994,1001 (4th Cir. 1986), *cert. denied,* 479 U.S. 876 (1986); *Praire*, 112 B.R. at 930; Epstein et al. at 133.

[90] *A.H. Robins*, 788 F.2d at 1005.

[91] *A.H. Robins* at 1001; *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 819 (5th Cir. 2003); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148(5th Cir. 1987); *Greeneberg v. Fincher & Son Real Estate, Inc.*, 753 S.W.2d 506, 507 (Tex. Ct. App. 1988); *In re Kanawha Trace Dev. Partners*, 87 B.R. 892 (Bankr. E.D. Va. 1988); *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1010 (N.D. Iowa 2001); *In re Midway Airlines Corp.*, 283 B.R. 846, 851 (E.D.N.C. 2002*).* However, it should be noted that this widening of the automatic stay has not been universally adopted by the Circuits. *See e.g. In re Chugach Forest Products, Inc.*, 23 F.3d 241, 246 (9th Cir. 1994); *Matter of Lockard*, 884 F.2d 1171, 1178 (9th Cir. 1989); *In re Christakis*, 291 B.R. 9, 18, 41 (Bankr. D. Mass. 2003).

[92] *Id.*

[93] *In re Siskin*, 231 B.R. 514, 518 (Bankr. E.D.N.Y. 1999) (In refusing to grant standing to sue under 362(h) to the non-debtor wife of a debtor, the court stated that "the definition of 'individual' under 11 U.S.C. § 362(h) does not necessarily include all parties who may have some tangential interest in Debtor's bankruptcy."); *In re Clemmer*, 178 B.R. 160, 164 (Bankr. E.D. Tenn. 1995) (section 362(h) cannot be read so expansively as to include nondebtors and noncreditors with the definition of 'individual.'); *Praire* 112 B.R. at 929 (buyer of debtor's assets lacked standing to sue under section 362(h)); *In re Sumpter*, 171 B.R. 835, 843-4 (Bankr. N.D. Ill. 1994) (the debtor had no standing to recover damages claimed by his

18

Therefore, it appears that the only remedy that non-party would have to sue for a violation of the stay would arise under section 105, and therefore would likely take the form of injunctive relief.[94]

### VIII.   What Does "Individual" Mean in Section 362(h)?

Section 362(h) states that an "individual" injured by a "willful violation" may recover damages.[95]   There is currently a split among the circuits as to whether the term "individual" encompasses only natural persons or whether it also includes corporations, trustees or other legal entities.[96]

A majority of circuits limit the meaning of "individual" in section 362(h) to natural persons because elsewhere, the Code uses the term "individual" exclusive of corporations, partnerships, and government.[97]   On the other hand, a minority of circuits define "individual" more broadly for purposes of section 362(h), to include other debtor entities.[98]   Generally, these "courts believe that the role of section 362(h) in deterring and repairing violations of the stay is overridingly important."[99]   The Fourth Circuit, which has adopted the minority view, stated:

> [I]t seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities.   Such a

---

family); *In re Bragg*, 56 B.R. 46, 50 (Bankr. M.D. Ala. 1984) (debtor's daughter denied standing under section 362).

[94]   *A.H. Robins*, 799 F.2d at 1002-1004; *In re John Manville Corp*, 40 B.R. 219, 229 (S.D.N.Y. 1983).

[95]   11 U.S.C. § 362(h).

[96]   *In re Spookyworld, Inc.*, 346 F.3d 1, 6 (1st Cir. 2003).

[97]   *See, e.g., Chatequgay Corp.*, 920 F.2d at 184; *Spookyworld, Inc.*, 346 F.3d at 6; *In re Just Brakes Corporate Sys., Inc.*, 108 F.3d 881, 885 (8th Cir. 1997); *Jove Eng'g, Inc.*, 92 F.3d at 1539; *Environmental Corp. v Knight (Goodman)*, 991 F.2d at 613; *Praire*, 125 B.R. at 217, 220-22; *Williams*, 124 B.R. at 311; *In re Ionosphere Clubs, Inc.*, 124 B.R. 635 (Bankr. S.D.N.Y. 1991).

[98]   *See Atlantic Business and Community Corp.*, 901 F.2d at 329 *Budget Service Co.*, 804 F.2d at 292; *In re Academy Answering Service, Inc.*, 100 B.R. at 329; *United States v. INSLAW, Inc.*, 113 B.R. 802, 820 (D. D.C. 1989), *rev'd on other grounds*, 932 F.2d 1467 (D.C. Cir. 1991); *In re Jim Nolker Chevrolet-Buick-Oldsmobile, Inc.*, 121 B.R. 20, 22 (Bankr. W.D. Mo. 1990).

[99]   Epstein et al. at 362.

Case 14-31425-pp    Doc 39    Filed 10/20/14    Page 21 of 31

narrow construction of the term would defeat much of the purpose of the section."[100]

Similarly, there is also an even split of authority over whether a bankruptcy trustee is an "individual" for purposes of section 362(h).[101] A number of courts have adopted a narrow view of "individual" to exclude a trustee, reasoning that while the trustee was a natural person, the interest the trustee represented was that of the bankruptcy estate, not a natural person.[102] In contrast, other courts have adopted a broader definition of the term "individual," which would assure that the trustee would have standing under section 362(h).[103]

### IX.    The Procedure for Enforcement:  How Can Debtors Challenge What They Consider to be Violations of the Stay?

A bankruptcy case encompasses both adversary proceedings and contested matters because virtually any dispute that arises in a bankruptcy case is one or the other.[104] It has been said, however, that "nothing in bankruptcy practice is more fundamentally confusing to many practitioners than the classification of some disputes as adversary proceedings and others as contested matters."[105]

The significance of whether a dispute is to be resolved in an adversary proceeding or as a contested matter lies in the applicable procedural rules.  An adversary proceeding is governed by

---

[100] *Budget Service Co.*, 804 F.2d at 292.
[101] 3 COLLIERS at 362-124.
[102] *In re Pace*, 67 F.3d 187, 192 (9th Cir. 1995); *see also In re Capps*, 135 B.R. 821 (Bankr. E.D. Tenn. 1992); *In re Bequette*, 184 B.R. 327(Bankr.S.D.Ill.1995); *Just Brakes*, 108 F.3d at 883; *In re Del Mission Ltd*, 98 F.3d 1147; *In re Cordle*, 187 B.R. 1 (Bankr. N.D. Cal. 1995).
[103] *Matter of Garofalo's Finer Foods, Inc.,* 186 B.R. 414, 439 (E.D. Ill. 1995), *rev'ing* 164 B.R. 955 (Bankr. E.D. Ill. 1994); *In re Fisher*, 144 B.R. 237 (Bankr. D. R.I. 1992); *Matter of Fugazy Exp., Inc.* 124 B.R. 426 (S.D.N.Y. 1991); *In re Jackson*, 1993 WL 146658 (Bankr. E.D. Pa. 1993); *In re Medlin*, 201 B.R. 188 (Bankr. E.D. Tenn. 1996); *In re Fisher*, 1996 WL 695401 D. Kan. 1996).
[104] *In re 995 Fifth Avenue Associates, L.P.*, 157 B.R. 942, 949 (Bankr. S.D.N.Y. 1993) ("a bankruptcy case is the "whole ball of wax.").
[105] Lawrence R. Ahern III & Nancy Fraas MacLean, BANKRUPTCY PROCEDURE MANUAL, § 9014.01, p. 1224 (2003) (hereinafter cited as "Ahern & MacLean").

Part VII of the Federal Rules of Bankruptcy Procedure,[106] and is commenced by the filing of a complaint with the clerk.[107] An adversary proceeding has been equated to "a full-blown federal civil proceeding conducted within the context of bankruptcy case" and therefore adopts certain civil rules that are applicable to basic litigation in federal court, such as forms of pleadings.[108]

A contested matter on the other hand is initially governed by Rule 9014 and is commenced by service of the motion, which may be filed within a reasonable time thereafter.[109] Compared to an adversary proceeding, a contested matter "is subject to 'less elaborate procedures' designed for the resolution of issues that are generally less complex, on an expedited basis."[110]

Rule 3007 states that if a debtor is objecting to a claim, then that objection is a contested matter governed by Rule 9014.[111] However, Rule 3007 also states that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."[112] Rule 7001 then includes a list of items that are adversary proceedings that includes "a proceeding to recover money or property ... [and] a proceeding to obtain an injunction or other equitable relief."[113] Therefore, in general, a claim for damages or for injunctive or other equitable relief must be brought as an adversary proceeding.[114]

---

[106] Rule 7001 et seq.
[107] Fed. *R. Bankr. Proc. Rule 7001 et. seq.*.
[108] *Id.*; *In re Schraiber*, 141 B.R. 1000, 1007 (Bankr. N.D. Ill. 1992) *quoting* GINSBERG, *Bankruptcy: Text, Statutes, Rules,* § 1.07[a ](2nd Ed. 1991).
[109] *Rule 9014*; *In are Al Aneiro*, 72 B.R. 424, 427 (Bankr. S.D. Cal. 1987); *Claybrook Drilling Company v. Divanco, Inc.*, 336 F.2d 697, 700 (10th Cir. 1964).
[110] See Ahern & MacLean § 9014.01 at 1225.
[111] *See Committee Note to Rule 3007* ("The contested matter initiated by an objection to a claim is governed by Rule 9014, unless a counterclaim by the trustee is joined with the objection to the claim. The filing of a counterclaim ordinarily commences an adversary proceeding subject to the rules in Part VII.").
[112] *Rule 3007.*
[113] *Rule 7001.*
[114] *In re WorldCorp., Inc.*, 252 B.R. 890(Bankr. D. Del. 2000); *In re Martin*, 268 B.R.168 (Bankr. E.D. Ark. 2001), *aff'd* 271 B.R.333 (E.D. Ark. 2002) (the debtor could not obtain an injunction by filing a motion, but had to file adversary complaint).

21

The courts are split over the issue of whether claims for damages for violations of the automatic stay must be brought as adversary proceedings or contested matters and neither the legislative history to the enactment nor the Code itself gives any guidance.[115]  Some courts have expressly concluded that these actions are contested matters and may be brought by motion rather than by complaint.[116]  However there are a number of cases holding that a claim for damages for a violation of the automatic stay must be brought as an adversary proceeding.[117]  The court in *Rimsat*[118] reasoned that, because an action based on a violation of the stay is includes "compensatory damages as a result of the violation, attorney fees, and often punitive

---

[115]  *See In re Timbs*, 178 B.R. 989, 994 (Bankr. E.D. Tenn. 1994).

[116]  *In re Zumbrun*, 88 B.R. 250, 252 (9th Cir. B.A.P. 1988); *In re Hooker Investments, Inc.*, 116 B.R. 375, 378 (Bankr. S.D.N.Y. 1990); *Timbs*, 178 B.R. at 994 ("the courts that have expressly considered the issue have unanimously concluded that these actions may be brought by motion rather than complaint); *Patton v. Shade*, 263 B.R. 861 (Bankr. C.D. Ill. 2001); *In re Price*, 134 B.R. 313, 315-16 (Bankr. N.D. Ill. 1991) (motion for sanctions under Bankruptcy Code's automatic stay provision is a contested matter); *In re Dunning*, 2001 WL 1380205 (Bankr. N.D. Ohio 2001) (Chapter 7 debtor could seek to recover sanctions for creditor's willful violation of stay, by moving for award of damages in his favor, and did not have to pursue such relief in adversary proceeding); *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920 (Bankr. D. Mont. 1990) (filing of adversary proceeding is not required to obtain relief for violation of automatic stay);  *Budget Service Co*, 804 F.2d at 289; In re Dencklau, 158 B.R. 796 (Bankr. N.D. Iowa 1993); In re McGinty, 119 B.R. 290 (Bankr. M.D. Fla. 1990); In re Dungey, 99 B.R. at 815; Matter of Mullarkey, 81 B.R. 280 (Bankr. D. N.J. 1987); In re Depew, 51 B.R. at 1014; In re Elegant Concepts Ltd., 67 B.R. 914 (Bankr. E.D.N.Y. 1986) (where respondents raised no objection to fact that sanction request was sought by motion rather than by adversary proceeding, if there was any procedural irregularity, respondent waived it); *Karsh Travel, Inc.*, 102 B.R. at 781 (Bankr. N.D. Cal. 1989), appeal dismissed, judgment vacated in part, on other grounds, 942 F.2d 792 (9th Cir. 1991) (claim for damages for violation of automatic stay was properly brought by motion); *Commercial Credit Corp. v. Reed*, 154 B.R. 471 (E.D. Tex. 1993) (although creditor assets that contempt in context of automatic stay violation should have been resolved in adversary proceeding, adversary proceeding is not required for contempt hearing); *Fidelity Mortgage Investors v. Camelia Builders Inc.*, 550 F.2d 47, 50 (2d Cir. 1976) (granting a motion for sanctions for the filing of a state court action in violation of the automatic stay, even though prior to the enactment of § 362(h)).

[117]  *Matter of Rimsat, Ltd.*, 208 B.R.910 (Bankr. N.D. Ind. 1997) (Remedy for alleged stay violation is properly sought through adversary proceeding); *In re Hunter*, 190 B.R. at 199; *In re McDonald*, 265 B.R. 3 (Bankr. D. Mass. 2001) (cause of action asserted by Chapter 7 debtors, to recover money from creditors based on their alleged violations of stay and civil contempt of discharge injunction, was properly pursued as adversary proceeding, rather than as contested matter); *In re Wyatt*, 173 B.R. 698, 704 (Bankr. D. Idaho 1994) (Action to collect punitive damages for violation of automatic stay should be adversary proceeding, and, thus, request for punitive damages will not be considered by motion); *In re Madison*, 249 B.R. 751 (Bankr. N.D. Ill. 2000) (proceeding that arose under damages provisions of stay was properly brought as adversary proceeding).

damages as well," the proceeding is "one to recover money or property or to obtain injunctive relief" and therefore an adversary proceeding is mandated by Rule 7001.[119]  In addressing this holding, the court in *Timbs*[120] recognized the merit of this argument, but refused to apply such a broad application of Rule 7001 as to require that these types of claims be brought as adversary proceedings.[121]  The *Timbs* opinion went on:

> Moreover, even where there is merit to the argument that a certain matter must be brought within the context of an adversary proceeding rather than as a contested matter, courts have allowed the matter to proceed on the merits as originally filed where the rights of the affected parties have been adequately protected so that no prejudice has arisen, refusing to elevate form over substance.[122]

In conclusion, the confusion over the contested matter versus adversary proceeding issue is an issue that is yet to be resolved.  For the present, however, the safer route for bringing claims for damages for violations of the stay does appear to be through an adversary proceeding.  It appears that no court has ever dismissed such a claim for damages (for a stay violation) because it should have been brought as a contested matter; the opposite is not true.[123]

---

[118]  *Id.*
[119]  *Id.* at 913.
[120]  *In re Timbs*, 178 B.R. 989.
[121]  *Id.* at 994.
[122]  *See Timbs* at 994; *Zumbrun*, 88 B.R. at 252 ("the same due process requirements are applicable to both Bankruptcy Rules 7004 and 9014"); *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 922-23; *In re Command Services Corp.*, 102 B.R. 905, 908 (Bankr. N.D.N.Y. 1989).
[123]  *See Wyatt*, 173 B.R. at 704 (the court refused to address issue of punitive damages under section 362(h) through a motion).

23

## X.    Contempt Procedure Under Rule 9020

Bankruptcy Rule 9020 sets out a procedure for dealing with contempt.[124]    Contempt committed in the presence of the bankruptcy judge may be determined summarily by the judge; on the other hand, other forms of contempt may be determined by the judge only after a hearing on notice.[125]    "An order of contempt has the same force and effect as an order entered by the district court unless, within 10 days after the order, the entity held in contempt serves and files objections, in which case the district court may review the findings and order *de novo*."[126]    Thus, contempt matters need not necessarily be referred to the district court; the bankruptcy court retains some power to deal with contempt.[127]

## XI.    Use of Section 105(a) as an Alternative to Section 362

The automatic stay imposed by section 362 of the Bankruptcy Code does not enjoin certain actions by creditors or other third parties.[128]    However, section 105(a) of the Bankruptcy Code, which provides bankruptcy courts with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,"[129] may offer the debtor and others (especially those closely related to the debtor) an alternative protection from certain actions that are not prohibited by the automatic stay.    Therefore, under the authority of section 105, courts will, *inter alia*, issue injunctions that prohibit these actions.

---

[124]. *Rule* 9020.
[125] *Id*; *see* also 3 COLLIER at 362-122.
[126] Ahern & MacLean § 9020.
[127] *See In re Ragar*, 3 F.3d 1174 (8th Cir. 1993) (collecting cases on divergent views of bankruptcy court's contempt power). The Advisory Committee Notes to the 1987 amendments state that the amended Rule 9020 "recognizes that bankruptcy judges may not have the power to punish for contempt." *But see Just Brakes*, 108 F.3d 881 ("congress has conferred no power to punish for a violation of section 362(a), other than the punitive damage authority in Section 362(h)").
[128] 11 U.S.C. § 362.
[129] 11 U.S.C. § 105.

24

There are of course many situations in which courts may issue 105 injunctions. Some cases involve actions against certain co-debtors or insiders such as guarantors, sureties or partners that may affect a debtor's reorganization. In a case involving a guarantor, the court will examine the closeness of the relationship between the debtor and the guarantor and the cost and duration of the legal proceeding that is the subject of the injunction.[130] In the event of a party sharing liability with the debtor, such as a surety, the court will consider the Supreme Court's four-factor test for issuing injunctions.[131] Finally, in cases involving partners of the debtor, courts will undergo an analysis similar to the analysis performed in cases involving guarantors.[132]

Injunctions can also be issued in cases where an action would unduly hinder a debtor's reorganization. These cases typically involve actions against non-debtors or non-estate assets that have a material role in the success of the debtor's reorganization, or matters that have unique circumstances.[133]

In addition, injunctions can be issued in cases involving actions that are exempt from the automatic stay pursuant to section 362(b) of the Bankruptcy Code.[134] Common examples of

---

[130] *See, e.g., Chase Manhattan Bank v. Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992); *Lazarus Burman Assocs. V. National Westminster Bank USA*, 161 B.R. 891, 899.

[131] *See, e.g., Homsy v. Floyd*, 51 F.3d 530 (5th Cir. 1995); *Zenith Lab., Inc. v. Sinay*, 104 B.R. 659 (D.N.J. 1989). *See also*, footnote 12, *infra*, which discusses the four-factor test for injunctions adopted by the Supreme Court.

[132] *See, Regency Realty Assocs. v. Howard Fertilizer, Inc.*, 179 B.R. 717 (Bankr. M.D. Fla. 1995).

[133] *See, e.g., Wysko Investment Co. v. Great Am. Bank*, 131 B.R. 146 (D. Ariz. 1991); *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986); *In re Johns Manville Corp.*, 26 B.R. 405, *later proceeding as* 26 B.R. 420, *modified*, 26 B.R. 420, *modified* 33 B.R. 254 (Bankr. S.D.N.Y. 1983), *aff'd in part*, 40 B.R. 219 (S.D.N.Y.), *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984).

[134] *See*, 11 U.S.C. § 362(b).

Case 14-31425-pp    Doc 39    Filed 10/20/14    Page 27 of 31

such actions include those that force the debtor to comply environmental laws or certain criminal prosecutions.[135]

Further, injunctions are occasionally issued in cases in which the automatic stay lapsed as a result of the court's failure to dispose of a request for stay relief in a timely manner as prescribed by section 362(e) of the Bankruptcy Code,[136] or as a result of the court granting a request for stay relief after timely consideration. However, some courts have refused to grant an injunction in the first situation because doing so directly contradicts the express deadlines set forth by section 362(e).[137] Injunctions in the second situation are more unusual because courts will only stay their own orders when presented with a strong change in the circumstances of the case.[138]

In the cases in which injunctions may be issued under section 105, courts most often consider some or all of the factors from the four-prong test for issuing injunctions adopted by the Supreme Court in *Younger v. Harris*[139] in deciding whether to issue the injunction.

---

[135] *See, e.g., Grace Coal Co. v. Kentucky* 155 B.R. 5 (Bankr. E.D. Ky. 1993); *In re Holder*, 26 B.R. 789 (Bankr. M.D. Tenn. 1982).

[136] *See, e.g., In re Martin Exploration Co.,* 731 F.2d 1210 (5th Cir. 1984); *In re Looney*, 823 F.2d 788 (4th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987); *see also*, 11 U.S.C. 362(e).

[137] *See, e.g., In re Jones*, 89 B.R. 1 (Bankr. D. D.C. 1988); *In re Wood*, 33 B.R. 320 (Bankr. D. Idaho 1983).

[138] *Chrysler Capital Corp. v Official Comm. of Unsecured Creditors*, 149 B.R. 950, 953-54 (D. Colo. 1993).

[139] 401 U.S. 37 (1971) (the four relevant factors to be considered when deciding whether to issue an injunction are (1) the substantial likelihood the movant will prevail on the merits of the underlying lawsuit; (2) the chance the movant will suffer irreparable injury if the injunction is not issued; (3) a balancing test of the harms to the parties affected by the decision; and (4) public policy considerations).

## XII.  Is There Jurisdiction in State Court to Enforce the Automatic Stay?

Section 1334 of title 28 provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[140]

The bankruptcy jurisdiction granted to the district courts by section 1334(a) and (b) may be transferred to the bankruptcy court under section 157 of title 28.[141]

With that background, there is a split of authority as to whether state courts have jurisdiction to determine the applicability of the automatic stay.[142]  A minority of courts have held that bankruptcy courts have exclusive jurisdiction to determine the applicability of the automatic stay.[143]  These courts reason that because the automatic stay is such a fundamental part of bankruptcy law it should be governed by section 1334(a),[144] which grants exclusive jurisdiction to the federal courts (which in turn grants jurisdiction to the bankruptcy courts under section 157).[145]

The majority of courts, however, seems to have held that "the applicability of the automatic stay falls concurrently within the purview of the bankruptcy court and that of the state

---

[140]  28 U.S.C. § 1334.
[141]  28 U.S.C. § 157(a) provides: "(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."
[142]  *In re Jeffries*, 191 B.R. 861, 863 (Bkrtcy. D. Or. 1995).
[143]  See, e.g., *In re Raboin*, 135 B.R. 682, 684 (Bankr. D. Kan. 1991); *Sermersheim v. Sermersheim*, 97 B.R. 885, 888 (Bankr. N.D. Ohio 1989); *Rainwater v. State of Ala. (In re Rainwater)*, 233 B.R. 126 (Bankr. N.D. Ala. 1999) (*citing Gruntz v. County of Los Angeles (In re Gruntz)*, 166 F.3d 1020, 1024-25; *reh'g granted*, 177 F.3d 729 (9th Cir.1999)); *In re Raboin*, 135 B.R. 682, 684 (Bankr. D. Kan. 1991).
[144]  28 U.S.C. § 1334(a).
[145]  *See Raboin*, 135 B.R. at 684; *see also* 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a).

27

court."[146]  These cases criticize the view of those holding for exclusive federal court jurisdiction by pointing out that because "a proceeding to determine the applicability of the automatic stay does not constitute a bankruptcy case, the exclusivity of jurisdiction provision of § 1334(a) does not apply."[147]  They hold that a "proceeding to determine the applicability of the automatic stay arises under Title 11, or arises in or is related to a case under Title 11" means that jurisdiction is granted through section 1334(b), which grants bankruptcy courts "original but not exclusive jurisdiction."[148]

There is also disagreement between the courts over whether a claim for damages for violations of the automatic stay may be brought in state court.  The majority of courts that have addressed this issue have held that these types of claims should be brought exclusively in the bankruptcy courts.[149]  As a rationale for this conclusion, these courts point to Congressional intent[150] and the comprehensive, self-contained nature of the Bankruptcy Code.[151]

On the other hand, the minority view is that jurisdiction for claims for damages for violations of the stay should not be granted exclusively to the federal courts and instead should

---

[146]  *In re Glass*, 240 B.R. 782, 786 (Bankr. M.D. Fla. 1999); *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.),* 765 F.2d 343, 347 (2d Cir. 1985); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir. 1986); *Jeffries,* 191 B.R. at 863; *In re Mann,* 88 BR 427, 429  (Bankr. S.D. Fla. 1988); *In re Montana,* 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995); *Sea Span Publications, Inc. v. Greneker (In re Sea Span Publications, Inc.),* 126 B.R. 622 (Bankr. M.D. Fla. 1991); *In re Cummings,* 201 B.R. 586, 588 (Bankr. S.D. Fla. 1996).
[147]  *Glass,* 240 B.R. at 786; *see also* 28 U.S.C. § 1334(a).
[148]  *Id.*; *see also* 28 U.S.C. § 1334(b).
[149]  *Hawthorne v. Hameed,* 836 P.2d 683, 686 (Okla. Civ. App. 1989) ("claims for relief from creditor's acts prohibited solely by the automatic stay should be brought only in bankruptcy court"); *Koffman v. Osteoimplant Technology, Inc.,* 182 B.R. 115, 125-6 (D. Md. 1995).
[150]  *Pereira v. First North American National Bank,* 233 B.R. 28, 31 (N.D. Ga. 1998) ("Congress clearly intended violations of the automatic stay ... to be addressed in the bankruptcy court rather than state law actions."); *see also Gonzales v. AM Community Credit Union,* 442 N.W.2d 536, 539 (Wis. Ct. App. 1989) ("It is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.").

be governed by 28 U.S.C. section 1334(b).[152] The District of Columbia Court of Appeals thus reasoned that because a "claim for damages for violation of the stay is a 'core proceeding' arising under title 11, but is not a case under title 11 ... the bankruptcy court has original, but not exclusive jurisdiction [under 1334(b)]."[153] Furthermore, at least one court has held that a state court may gain concurrent jurisdiction for claims for damages for stay violations, if the debtor raises affirmative defenses under state law and fails to remove the matter to federal court.[154]

NAS:541566.4

---

[151]  *In re Shape*, 135 B.R. 707, 708 (Bankr. D. Me. 1992) *quoting Periera v. Chapman*, 92 B.R. 903, 908 (C.D. Cal. 1988) ("The Bankruptcy Code provides a comprehensive scheme reflecting a 'balance, completeness and structural integrity that suggests remedial exclusivity'").
[152]  *Powell v. Washington Land Co., Inc.*, 684 A.2d 769, 773 (D.C. App. 1996); *In re Jeffries*, 191 B.R. 861, 863 (Bankr. D. Or. 1995); *see also* 28 U.S.C. § 1334(b).
[153]  *Powell*, 684 A.2d at 773.
[154]  *Jeffries*, 191 B.R. at 863.

29